UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PONTELL BRYANT,

                Plaintiff,

                v.

SGT. W. VESSELL, S/C.O. HOFF, S/C.O. VIRUET, S/C.O. BOUREY, S/C.O. CHRISTOPHER, S/C.O. WILKERSON, STEVEN ZAHODNICK, S. SPRICH, D. LOPEZ, VERONICA NENDZE,

                Defendants.

Civil Action No. 09-5337 (SDW) (MCA)

**OPINION**

July 6, 2011

**WIGENTON**, District Judge.

Before the Court are Defendants Sgt. W. Vessell ("Vessell"), S/C.O. Hoff ("Hoff"), S/C.O. Viruet ("Viruet"), S/C.O. Bourey ("Bourey"), S/C.O. Christopher ("Christopher"), Steven Zahodnick ("Zahodnick"), S. Sprich ("Sprich"), D. Lopez ("Lopez")[1] ("collectively Extraction Defendants"), S/C.O. Wilkerson ("Wilkerson"), and Veronica Nendze's ("Nendze") (collectively "Defendants") Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c) and/or Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) ("Motion").[2] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367(a). Venue is proper pursuant to 28 U.S.C. §1391(b)(1) and (2). The Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, this Court grants Defendants' Motion.

---

[1] Defendants Vessell and Lopez are sometimes referred to as Vessel and Lopes in the record.
[2] This Motion is unopposed as Plaintiff has not filed an Opposition Brief.

1

**FACTUAL AND PROCEDURAL HISTORY**

On July 10, 2009, Plaintiff Pontell Bryant ("Plaintiff" or "Bryant"), who was then an inmate at East Jersey State Prison ("EJSP"),[3] was charged with a disciplinary infraction for allegedly threatening Defendant Wilkerson. (Calderon Decl. Ex. A at SID0002, SID0027.) Therefore, he was required to move to another cell for pre-hearing detention. (Id. at SID0002.) Vessell ordered Plaintiff to step out of his cell. (Id.) However, Bryant refused to come out of his cell; hence, the EJSP administration approved a forced cell extraction. (Id.)

The extraction team was led by Vessell and included Defendants Sprich, Viruet, Hoff, Zahodnick, Bourey, Christopher, and Lopez. (Id. at SID0003.) The cell extraction was recorded and the DVD was entered into evidence. (See Calderon Decl. Ex. A.) The DVD recording shows that Plaintiff refused to comply with Vessell's orders to step out of his cell and submit to handcuffing. Plaintiff covered the window of his cell in violation of prison rules, barricaded his cell door with his mattress, and soaked the floor in his cell with a slippery substance. (Id.) After Bryant refused to comply with Vessell's orders, a burst of pepper spray was administered through an opening in his cell door. When Plaintiff still refused to comply, the extraction team entered his cell to handcuff and shackle him. (Id.) The DVD recording shows that Plaintiff was extremely combative, uncooperative, and resistant when the extraction team entered his cell. It took the extraction team about three minutes to subdue Bryant and secure him with restraints. (Id. at SID0003.) Plaintiff also yelled expletives at the team and threatened to spit on them. As a result, an anti-spitting mask was placed over Bryant's head. (Id.) Even after Plaintiff was secured, he continued to be uncooperative and yelled statements like "this is far from over" and "I've been planning this since day one." (Calderon Decl. Ex. A.) Vessell advised Bryant that his

---

[3] Plaintiff is currently incarcerated at Bayside State Prison. (Defs.' Statement of Facts ¶ 1.)

handcuffs would be removed if he cooperated; however, Bryant responded that there would be "round two" if his handcuffs were removed and that he would "come out swinging." (Id.)

Immediately after Bryant's decontamination shower, he was taken for a medical examination. The video explicitly shows Plaintiff stating that he "refuses medical attention." (Id.) Nonetheless, Nendze examined Plaintiff. (Pelzer Decl. Ex. C at DOC0018.) Nendze noted that Bryant's "vital signs were within normal limits." (Id.) She also lifted Plaintiff's shirt and performed a physical examination of his back, chest, and abdomen. (Calderon Decl. Ex. A.) Her examination revealed that Bryant had a laceration on his outer left eye and a small cut on his left middle finger. (Pelzer Decl. Ex. C at DOC0018.) Nendze treated Plaintiff's wounds. (Calderon Decl. Ex. A.)

Bryant received three prison disciplinary charges as a result of his actions on that day: *.005 (threatening), *.306 (conduct which disrupts), and *.012 (throwing bodily fluids), which was later amended to a *.002 charge (assault). (Pelzer Decl. Ex. C at DOC0001-DOC0005, DOC00026-DOC0030.) Plaintiff alleges that the extraction team punched and kicked him, hit him in the eye with handcuffs, and placed him in tight restraints. (Am. Compl. ¶¶ 12-13.)

Subsequently, Plaintiff, proceeding pro se, filed this action alleging a violation of 42 U.S.C. § 1983 for failure to provide medical care and use of excessive force in violation of the Eighth Amendment, retaliation, being subjected to unconstitutional procedural hearings, and negligence. (Id. ¶¶ 20-26.)

## STANDARD OF REVIEW

a. **Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

3

56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  Id. at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculation, unsupported assertions or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  Podobnik v. U.S. Postal Service., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325).  Further, the

4

nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law.  Celotex Corp., 477 U.S. at 322-23.

## DISCUSSION
### a. Section 1983 Claims

Section 1983 creates a federal remedy for individuals who have been deprived by state officials of their constitutional rights and privileges.  See generally Gonzaga Univ. v. Doe, 536 U.S. 273 (2002).  The statute provides in relevant part that "[e]very person, who under color of any statute, ordinance, regulation . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  Section 1983 does not "[b]y itself . . . create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  To recover under § 1983, the Plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988). Defendants argue that Plaintiff has no viable claim because: (1) he has failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"); (2) he has failed to demonstrate that his Eighth Amendment rights were violated; (3) he has failed to demonstrate that Defendants

retaliated against him; (4) he was not subjected to unconstitutional hearings; (5) he has failed to comply with the notice requirement of the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. §59:1-1 et seq. (West 2011); and (6) he has failed to establish a claim of negligence.

### i. The PLRA's Exhaustion Requirement

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section . . . [1983 of this title], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Therefore, if a prisoner has not properly exhausted the available administrative remedies, a federal court must dismiss the case. Woodford v. Ngo, 548 U.S. 81 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Grievance procedures in inmate handbooks are administrative procedures that must be exhausted prior to the filing of a suit. Concepcion v. Morton, 306 F.3d 1347, 1348-49 (3d Cir. 2002). The administrative process must be followed to completion before suit may be brought in federal court; a prisoner does not exhaust administrative remedies until a grievance is fully pursued through each level of appeal available in the prison's system. Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004); Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000).

The PLRA's exhaustion requirement applies to Bryant because he was incarcerated at the time of the filing of this Complaint. Abdul-Akbar v. McKelvie, 239 F.3d 307, 314 (3d Cir. 2001). EJSP's grievance procedure requires a prisoner to complete and submit an "Inmate Request System and Remedy Form." (Farrell Decl. Ex. A. at 46.) After that form is submitted, a staff response is provided within thirty (30) days of the form's submission. (Id. at 47.)

6

Thereafter, the inmate may appeal to the prison administration within ten (10) days of the inmate's receipt of the staff response. (Id.)

Bryant filed five inmate remedy forms regarding the July 10, 2009 incident. (Farrell Decl. Ex. B. at IRFS0001-IRFS0005.) Two of those forms specifically concerned Defendants' alleged refusal to provide medical care and use of excessive force. (Farrell Decl. Ex. B. at IRFS0001 and IRFS0002.) Defendants argue that Plaintiff failed to exhaust his administrative remedies because he filed his appeal of the remedy form on July 18, 2010, more than ten days after he received the staff responses. (See Postelnik Decl. Ex. A, Bryant Dep. 59:9-12.) Nevertheless, Plaintiff asserts that he actually filed the appeal on July 18, 2009, and that he mistakenly put down the wrong date. (Id. at 61:2-3.) Bryant's version of the facts is inconsistent with the record. The staff responses for Plaintiff's remedy forms concerning the failure to provide medical care and use of excessive force were dated July 28, 2009 and July 22, 2009. (Farrell Decl. Ex. B. at IRFS0001 and IRFS0002.) Therefore, according to Plaintiff's version of the facts, he filed his appeal, at least, four days before he received the staff responses. Plaintiff could not have possibly appealed the staff responses before he received them. Hence, Bryant has failed to establish that his administrative appeal was timely. As a result, he did not exhaust his administrative remedies.

In any event, even if Plaintiff filed his administrative appeal on time, he still does not have a viable Eighth Amendment claim.

### ii. Eighth Amendment Violation

#### 1. Excessive Force Claim

Plaintiff alleges that the Extraction Defendants violated his Eighth Amendment rights by using excessive force against him during the forced extraction. Furthermore, Bryant argues that

7

Nendez denied him medical care. "The Eighth Amendment, which applies to the states by virtue of the Fourteenth Amendment, prohibits" punishments that are "cruel and unusual." Jackson v. Danberg, 594 F.3d 210, 216 (3d Cir. 2010). An Eighth Amendment claim includes an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component is "contextual and responsive to 'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). The subjective component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson, 501 U.S. at 297). "What is necessary to establish an 'unnecessary and wanton infliction of pain,' . . . varies according to the nature of the alleged constitutional violation." Hudson, 503 U.S. at 5 (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)).

Where the claim against a prison official is one of excessive use of force in violation of the Eighth Amendment, the core inquiry as to the subjective component is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9. In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a "significant injury." Id. However, not "every malevolent touch by a prison guard" is actionable because "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force." Id. at 9-10.

To determine whether force was used in "good-faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 321).

Plaintiff's excessive force claim lacks merit because he has failed to establish that the Extraction Defendants inappropriately applied force, or that their use of force was not in good faith. The DVD recording of the extraction clearly shows that Plaintiff failed to comply with Vessell's orders to step out of his cell and that Plaintiff was resistant and uncooperative. Bryant threatened physical violence against the extraction team and threatened to spit on them. The Extraction Defendants did not use any force against Plaintiff after he was subdued and he was immediately taken for a decontamination shower and a medical examination. Plaintiff maintains that he was placed in "tight restraints." The recording shows that Vessell advised Bryant that he would loosen his restraints if Bryant cooperated. However, Plaintiff repeatedly stated that he would not cooperate and that there would be "round two" if he was uncuffed. (Calderon Decl. Ex. A.) Therefore, he was restrained because he refused to cooperate and he posed a threat to the extraction team.

The record demonstrates that the Extraction Defendants did not, at any point, attempt to maliciously or sadistically injure Bryant. Plaintiff has not offered any evidence to contradict the recording of the cell extraction, which shows that the extraction team used only the amount of force necessary to diffuse the threat caused by Bryant's refusal to comply with simple orders.

Defendants' actions were a proper and good faith use of force "to maintain or restore discipline" and do not constitute an unnecessary and wanton infliction of pain. Whitley, 475 U.S. at 320-21.

### 2. Medical Care Claim

Similarly, Bryant's claim that Defendant Nendze failed to provide him with proper medical care has no basis. To prevail on a claim for failure to provide medical care under the Eighth Amendment, Bryant must establish that Nendze was deliberately indifferent to his serious medical needs. Estelle, 429 U.S. at 104. A "deliberate indifference" exists when the prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Here, Plaintiff has failed to establish that Nendze was deliberately indifferent. Plaintiff was taken for medical examination immediately after his contamination shower. The recording shows that although Plaintiff refused medical care, Nendez checked his vital signs, performed a physical examination, and cleaned the wounds on Plaintiff's eye and finger. (Calderon Decl. Ex. A.)

Nonetheless, Plaintiff alleges that he had "a gash" and bruises on his stomach and legs that Nendez did not treat. But Bryant has not established that Nendez knew of the wounds on his stomach or legs. Nendez lifted Plaintiff's shirt when he was brought in and she performed a physical examination of his chest, abdomen, and back. There was no blood or wound on Plaintiff's abdomen. Additionally, Bryant did not complain to Nendez that he had an injury on his abdomen or legs. Hence, Plaintiff has failed to show that Nendez was aware of his wounds. In fact, Plaintiff admits that Nendez treated the wounds that were visible at the time he was brought in. (Postelnik Decl. Ex. A, Bryant Dep. 45:10-14.) Moreover, Plaintiff asserts that

10

when he eventually complained about the injuries on his abdomen and legs, he was promptly examined and treated by another nurse. (Id. at 43:3-7; 46:12-21.) Therefore, no genuine issue of material fact exists and Defendant was not deliberately indifferent to Plaintiff's medical needs.

### iii. Retaliation

"Section 1983 imposes liability for retaliatory conduct by prison officials if the conduct was motivated 'in substantial part by a desire to punish [the] individual for the exercise of a constitutional right.'" Jerry v. Beard, 2011 U.S. App. LEXIS 5861, *7 (3d Cir. Mar. 22, 2011) (quoting Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000)). To establish a § 1983 retaliation claim, the plaintiff must prove that (1) "the conduct which led to the alleged retaliation was constitutionally protected," (2) "he suffered some 'adverse action' at the hands of the prison officials," and (3) there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (citations omitted).

Plaintiff alleges that Wilkerson retaliated against him because he told Wilkerson he would report him and write him up. (Postelnik Decl. Ex. A, Bryant Dep. 31:4-5.) Bryant maintains that because he told Wilkerson he would report him, the Extraction Defendants used excessive force against him. Plaintiff's claim, however, lacks merit because he specifically admits that Wilkerson was not involved in the forced extraction. (Id. at 24:18-19.) Additionally, it was Plaintiff's refusal to obey orders that led to the use of force against him. Furthermore, the Extraction Defendants assert that they had no knowledge of any grievance or lawsuit filed by Bryant. (Calderon Decl. Ex. A at SID0004-SID0006.) Therefore, he has failed to establish that Wilkerson retaliated against him.

### iv. Unconstitutional Hearings

Bryant maintains that Defendants subjected him to false disciplinary charges and unconstitutional procedural hearings "to justify the unprovoked 'excessive force.'" (Am. Compl. ¶ 17.) In Wolff v. McDonnell, the Supreme Court set forth the minimal procedural requirements for a prison disciplinary hearing. 418 U.S. 539, 563-71 (1974). The prisoner must receive "(1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity 'to call witnesses and present documentary evidence in his defense.'" Armstead v. Mee, 2011 U.S. Dist. LEXIS 50677, *17 n.4 (D.N.J. May 9, 2011) (quoting Wolff, 418 U.S. at 563-71).

Plaintiff was given adequate notice about the charges against him and the factual basis for the disciplinary action. (Pelzer Decl. Ex. C at DOC0001-DOC0005, DOC00026-DOC0030.) Furthermore, Plaintiff's request to call witnesses was granted, he appeared at the hearing, had the opportunity to defend himself, and was provided the assistance of an inmate counsel substitute. (Id. at DOC0002-DOC0005.) Therefore, Bryant has not established a claim of false disciplinary charges.

### b. Negligence

Bryant alleges that Defendants breached their duty of care to him by "arbitrarily subject[ing him] to excessive force[,] retaliation, and unconstitutional procedur[al] hearings." (Am. Compl. ¶ 23.) Pursuant to the NJTCA, no claim shall be filed against a public entity or a public employee for injury to the person unless the claimant files a notice of claim within ninety days of the accrual of the cause of action. N.J. Stat. Ann. § 59:8-3. The notice requirement is a precondition to filing a suit and "[a] claimant's failure to satisfy this precondition mandates

dismissal." Michaels v. New Jersey, 955 F. Supp. 315, 329 (D.N.J. 1996). Here, Plaintiff has admitted that he did not file the requisite notice of claim. (Postelnik Decl. Ex. A, Bryant Dep. 54:3-6.) Therefore, he cannot pursue a cause of action for negligence against Defendants. Additionally, Bryant has no basis to assert a negligence claim against Defendants as this Court has concluded that Defendants did not subject Plaintiff to excessive force, retaliation, or unconstitutional procedural hearings.

## CONCLUSION

For the above stated reasons, Defendants' Motion is GRANTED.

**SO ORDERED.**

s/ Susan D. Wigenton<br>
**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.